**DOCKETED**

AUG 2 6 2002

FILED

02 AUG 23 PM 3:45

CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACK ZINGERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | NO. **02C 6050** |
| | ) | |
| vs. | ) | JURY DEMAND  JUDGE COAR |
| | ) | |
| FREEMAN DECORATING CO., | ) | |
| | ) | MAGISTRATE JUDGE DENLOW |
| Defendant. | ) | |

## COMPLAINT

Now comes Plaintiff, Jack Zingerman, (hereinafter referred to as "Zingerman") by Robert S. Pinzur, Elliott D. Hartstein, Laura E. Cohen, Barbara B. Bryan, Brian S. Brewer and Megan L. Kerr, of Pinzur & Hartstein, Ltd., his attorneys, demanding trial by jury, complaining against Defendant, Freeman Decorating Co. (hereinafter referred to as "Freeman"), and states:

### COUNT I - DISCRIMINATION BASED ON RELIGION

1.  This Court has jurisdiction of this case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, *et seq.*, The Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101, *et seq.*; the First Amendment of the United States Constitution; Article I, Section 3, of the Illinois Constitution; the Religious Freedom Restoration Act of 1993 (RFRA) and Civil Rights Act of 1991 (hereinafter referred to as "Acts").

2.  This action properly lies in this District pursuant to 28 U.S.C. Sec. 1391 because the claim arose in this Judicial District.

3.  Zingerman's religion is Judaism.

4.  Zingerman is a resident of Cook County, Illinois.

5.  Zingerman was employed by Defendant, Freeman, from September, 1994 until he was involuntarily terminated on May 16, 2001.

6.  During his employment with Freeman, Zingerman performed all material conditions and requirements of his positions, the last position being carpenter, in a satisfactory manner.

7.  Many of Zingerman's co-workers used workbenches in the course of performing their jobs.

8.  After Roger Lyons became Zingerman's Supervisor, Roger Lyons had the workbench which

1

Zingerman was using removed.

9. Roger Lyons told Zingerman "I hate the D.P. and Jew."

10. One of Zingerman's job responsibilities included working with an aluminum saw.

11. Roger Lyons told Zingerman that Zingerman could no longer work the saw and shortly thereafter gave that job to one of Roger Lyon's relatives.

12. Zingerman complained to Bill Casey, Zingerman's Union Agent, about the discrimination Zingerman was subjected to by Roger Lyons.

13. No action was taken by Bill Casey.

14. Zingerman complained to Tom Rockelman, Zingerman's Floor Manager, about the discrimination Zingerman was subjected to by Roger Lyons.

15. Tom Rockelman took Zingerman to speak to Harold (last name unknown), Zingerman's Branch Manager.

19. Zingerman complained to Harold (last name unknown), Branch Manager, about the discrimination Zingerman was subjected to by Roger Lyons.

20. No action was taken by Harold (last name unknown).

21. On May 29, 1998, Zingerman was injured on-the-job and required surgery as a result thereof. Following surgery, co-employee, Don Underwood, telephoned Zingerman, telling Zingerman that Zingerman should not return to work as Roger Lyons was going to make work difficult for Zingerman and that Roger had instructed Don Underwood not to help Zingerman.

22. Bill Casey, Zingerman's Union Agent, told Zingerman to forget about whatever had happened.

23. When Zingerman's doctor gave Zingerman permission to return to work following surgery, Roger Lyons told Zingerman there were no jobs available for Zingerman.

24. Zingerman subsequently needed a second surgery following Zingerman's May 29, 1998 on-the-job injury.

25. On May 16, 2001, Zingerman's doctor gave Zingerman permission to return to work. Zingerman was again informed by Roger Lyons there were no jobs available for Zingerman and Zingerman's employment was terminated.

26. Freeman engaged in the following behavior because of Zingerman's religion:

    A. Removing Zingerman's workbench.

2

     B.     Zingerman's Supervisor, Roger Lyons, told Zingerman "I hate the D.P. and Jew."

     C.     Zingerman complained to Bill Casey, Plaintiff's Union Agent, about the discrimination, but no action was taken by Bill Casey.

     F.     Zingerman complained to Harold (last name unknown), Branch Manager, about the discrimination, but no action was taken by Harold (last name unknown).

27.     Freeman terminated Zingerman because of Zingerman's religion.

28.     Freeman interfered with Zingerman's ability to do his job.

29.     Zingerman opposed the discrimination.

30.     On May 16, 2001, Zingerman was terminated by Freeman without just cause.

31.     Zingerman has not received compensation from Freeman since the termination.

32.     As a result of the above described conduct, Zingerman has lost in excess of $40,000.00 in income and benefits.

33.     As a result of the above described conduct, Zingerman has suffered anguish, emotional trauma, pain and suffering.

34.     As a result of the above described conduct, Zingerman has incurred substantial legal fees and costs in prosecution of this matter and will continue to incur substantial attorney fees and costs in the future which are anticipated to be in excess of $50,000.

35.     Freeman is a corporation with its principal place of business in Cook County, Illinois.

36.     Freeman is engaged in manufacturing products which is an industry affecting commerce and, at all relevant times hereto, was an employer subject to the jurisdiction of this Court.

37.     Zingerman has complied with all administrative prerequisites by filing timely a Charge of Discrimination based on religion, national origin, retaliation and hostile work environment with the EEOC on January 14, 2002. A copy of the Charge is attached as Exhibit "A" and incorporated herein.

38.     Several days after May 29, 2002, Zingerman received a Determination And Notice Of Right To Sue from the EEOC. A copy of the Determination is attached as Exhibit "B" and incorporated herein.

39.     Zingerman was terminated by Freeman as a result of Zingerman's religion, being Jewish.

40.     Freeman had no legitimate reason for termination of Zingerman.

41. By terminating Zingerman, Freeman willfully and intentionally discriminated against Zingerman on the basis of his religion.

42. Further, by terminating Zingerman's employment, Defendant knew and/or showed reckless disregard for the matter of whether its conduct violated the Acts.

43. As a result of the unlawful and willful acts complained of herein, Zingerman has suffered loss of employment, wages, benefits and other compensation.

44. Zingerman was terminated by Employer as a result of Zingerman's religion.

45. Employer had no legitimate reason for termination of Zingerman.

46. By terminating Zingerman, Employer willfully and intentionally discriminated against Zingerman on the basis of his religion.

47. Further, by terminating Zingerman's employments, Defendant knew and/or showed reckless disregard for whether its conduct violated the Acts.

48. As a result of the unlawful and willful acts complained of herein, Zingerman has suffered loss of employments, wages, benefits and other compensation.

Wherefore, Zingerman respectfully requests this Court enter judgment granting Zingerman the following:

A. Payment of all back pay, employee benefits and pension benefits in excess of $40,000.00.

B. Front pay and all prospective lost benefits.

C. Compensatory damages of $300,000 or more in actual damages for pain and suffering.

D. Reinstatement to his prior position.

E. Punitive damages of $300,000 or more.

F. An award for liquidated damages, attorney fees and costs and any other relief this Court deems appropriate.

## COUNT II - DISCRIMINATION BASED ON NATIONAL ORIGIN

1. This Court has jurisdiction of this case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, *et seq.*, The Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101, *et seq.*; the First Amendment of the United States Constitution; Article I, Section 3, of the Illinois Constitution; the Religious Freedom Restoration Act of 1993 (RFRA) and Civil Rights Act of 1991 (hereinafter referred to as "Acts").

4

2.	This action properly lies in this District pursuant to 28 U.S.C. Sec. 1391 because the claim arose in this Judicial District.

3.	Zingerman's national origin is Russian.

4.	Zingerman is a resident of Cook County, Illinois.

5.	Zingerman was employed by Defendant, Freeman, from September, 1994 until he was involuntarily terminated on May 16, 2001.

6.	During his employment with Freeman, Zingerman performed all material conditions and requirements of his positions, the last position being carpenter, in a satisfactory manner.

7.	Zingerman's supervisor, Roger Lyons, treated Zingerman unfairly in that prior to becoming Zingerman's supervisor, Roger Lyons told a co-employee, Jerry Gordowicz, that when Roger Lyons became a Supervisor, Roger Lyons intended to "get rid of" a couple of D.P.s (Displaced Persons) including Zingerman, and give jobs to Roger Lyon's family and friends.

8.	Many of Zingerman's co-workers used workbenches in the course of performing their jobs.

9.	After Roger Lyons became Zingerman's Supervisor, Roger Lyons had the workbench which Zingerman was using removed and told Zingerman that "D.P.'s don't need benches."

10.	Roger Lyons told Zingerman "I hate the D.P. and Jew."

11.	One of Zingerman's job responsibilities included working with an aluminum saw.

12.	Roger Lyons told Zingerman that Zingerman could no longer work the saw and shortly thereafter gave that job to one of Roger Lyon's relatives.

13.	Zingerman has some difficulty reading and writing English. Roger Lyons was well aware of this and instructed other employees not to let anyone help Zingerman with tasks involving reading and writing English.

14.	Zingerman complained to Bill Casey, Zingerman's Union Agent, about the discrimination Zingerman was subjected to by Roger Lyons.

15.	No action was taken by Bill Casey.

16.	Zingerman complained to Tom Rockelman, Zingerman's Floor Manager, about the discrimination Zingerman was subjected to by Roger Lyons.

17.	Tom Rockelman took Zingerman to speak to Harold (last name unknown), Zingerman's Branch Manager.

19.	Zingerman complained to Harold (last name unknown), Branch Manager, about the

discrimination Zingerman was subjected to by Roger Lyons.

20. No action was taken by Harold (last name unknown).

21. On May 29, 1998, Zingerman was injured on-the-job and required surgery as a result thereof. Following surgery, co-employee, Don Underwood, telephoned Zingerman, telling Zingerman that Zingerman should not return to work as Roger Lyons was going to make work difficult for Zingerman and that Roger had instructed Don Underwood not to help Zingerman.

22. Bill Casey, Zingerman's Union Agent, told Zingerman to forget about whatever had happened.

23. When Zingerman's doctor gave Zingerman permission to return to work following surgery, Roger Lyons told Zingerman there were no jobs available for Zingerman.

24. Zingerman subsequently needed a second surgery following Zingerman's May 29, 1998 on-the-job injury.

25. On May 16, 2001, Zingerman's doctor gave Zingerman permission to return to work. Zingerman was again informed by Roger Lyons there were no jobs available for Zingerman and Zingerman's employment was terminated.

26. Freeman engaging in the following behavior because of Zingerman's national origin:

    A. Removing Zingerman's workbench.

    B. Telling Zingerman "D.P.s (Displaced Persons) don't need benches."

    C. Zingerman's Supervisor, Roger Lyons, told Zingerman "I hate the D.P. and Jew."

    D. Zingerman's Supervisor, Roger Lyons, knew Zingerman had some difficulty reading and writing English and instructed other employees not to help Zingerman with tasks involving reading and writing English.

    E. Zingerman complained to Bill Casey, Plaintiff's Union Agent, about the discrimination, but no action was taken by Bill Casey.

    F. Zingerman complained to Harold (last name unknown), Branch Manager, about the discrimination, but no action was taken by Harold (last name unknown).

27. Freeman terminated Zingerman because of Zingerman's national origin.

28. Freeman interfered with Zingerman's ability to do his job.

29. Zingerman opposed the discrimination.

30. On May 16, 2001, Zingerman was terminated by Freeman without just cause.

31. Zingerman has not received compensation from Freeman since the termination.

32. As a result of the above described conduct, Zingerman has lost in excess of $40,000.00 in income and benefits.

33. As a result of the above described conduct, Zingerman has suffered anguish, emotional trauma, pain and suffering.

34. As a result of the above described conduct, Zingerman has incurred substantial legal fees and costs in prosecution of this matter and will continue to incur substantial attorney fees and costs in the future which are anticipated to be in excess of $50,000.

35. Freeman is a corporation with its principal place of business in Cook County, Illinois.

36. Freeman is engaged in manufacturing products which is an industry affecting commerce and, at all relevant times hereto, was an employer subject to the jurisdiction of this Court.

37. Zingerman has complied with all administrative prerequisites by filing timely a Charge of Discrimination based on religion, national origin, retaliation and hostile work environment with the EEOC on January 14, 2002. A copy of the Charge is attached as Exhibit "A" and incorporated herein.

38. Several days after May 29, 2002, Zingerman received a Determination And Notice Of Right To Sue from the EEOC. A copy of the Determination is attached as Exhibit "B" and incorporated herein.

39. Zingerman was terminated by Freeman as a result of Zingerman's national origin, being Russian.

40. Freeman had no legitimate reason for termination of Zingerman.

41. By terminating Zingerman, Freeman willfully and intentionally discriminated against Zingerman on the basis of his national origin.

42. Further, by terminating Zingerman's employment, Defendant knew and/or showed reckless disregard for the matter of whether its conduct violated the Acts.

43. As a result of the unlawful and willful acts complained of herein, Zingerman has suffered loss of employment, wages, benefits and other compensation.

44. Zingerman was terminated by Employer as a result of Zingerman's national origin.

45. Employer had no legitimate reason for termination of Zingerman.

46. By terminating Zingerman, Employer willfully and intentionally discriminated against

Zingerman on the basis of his national origin.

47. Further, by terminating Zingerman's employments, Defendant knew and/or showed reckless disregard for whether its conduct violated the Acts.

48. As a result of the unlawful and willful acts complained of herein, Zingerman has suffered loss of employments, wages, benefits and other compensation.

Wherefore, Zingerman respectfully requests this Court enter judgment granting Zingerman the following:

A. Payment of all back pay, employee benefits and pension benefits in excess of $40,000.00.

B. Front pay and all prospective lost benefits.

C. Compensatory damages of $300,000 or more in actual damages for pain and suffering.

D. Reinstatement to her prior position.

E. Punitive damages of $300,000 or more.

F. An award for liquidated damages, attorney fees and costs and any other relief this Court deems appropriate.

## COUNT III - HOSTILE WORK ENVIRONMENT

1. This Court has jurisdiction of this case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, *et seq*., The Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101, *et seq*.; the First Amendment of the United States Constitution; Article I, Section 3, of the Illinois Constitution; the Religious Freedom Restoration Act of 1993 (RFRA) and Civil Rights Act of 1991 (hereinafter referred to as "Acts").

2. This action properly lies in this District pursuant to 28 U.S.C. Sec. 1391 because the claim arose in this Judicial District.

3. Zingerman's religion is Judaism.

4. Zingerman's national origin is Russian.

5. Zingerman is a resident of Cook County, Illinois.

6. Zingerman was employed by Defendant, Freeman, from September, 1994 until he was involuntarily terminated on May 16, 2001.

7. During his employment with Freeman, Zingerman performed all material conditions and

requirements of his positions, the last position being carpenter, in a satisfactory manner.

8. Zingerman's supervisor, Roger Lyons, treated Zingerman unfairly in that prior to becoming Zingerman's supervisor, Roger Lyons told a co-employee, Jerry Gordowicz, that when Roger Lyons became a Supervisor, Roger Lyons intended to "get rid of" a couple of D.P.s (Displaced Persons) including Zingerman, and give jobs to Roger Lyon's family and friends.

9. Many of Zingerman's co-workers used workbenches in the course of performing their jobs.

10. After Roger Lyons became Zingerman's Supervisor, Roger Lyons had the workbench which Zingerman was using removed and told Zingerman that "D.P.'s don't need benches."

11. Roger Lyons told Zingerman "I hate the D.P. and Jew."

12. One of Zingerman's job responsibilities included working with an aluminum saw.

13. Roger Lyons told Zingerman that Zingerman could no longer work the saw and shortly thereafter gave that job to one of Roger Lyon's relatives.

14. Zingerman has some difficulty reading and writing English. Roger Lyons was well aware of this and instructed other employees not to let anyone help Zingerman with tasks involving reading and writing English.

15. Zingerman complained to Bill Casey, Zingerman's Union Agent, about the discrimination Zingerman was subjected to by Roger Lyons.

16. No action was taken by Bill Casey.

17. Zingerman complained to Tom Rockelman, Zingerman's Floor Manager, about the discrimination Zingerman was subjected to by Roger Lyons.

18. Tom Rockelman took Zingerman to speak to Harold (last name unknown), Zingerman's Branch Manager.

19. Zingerman complained to Harold (last name unknown), Branch Manager, about the discrimination Zingerman was subjected to by Roger Lyons.

20. No action was taken by Harold (last name unknown).

21. On May 29, 1998, Zingerman was injured on-the-job and required surgery as a result thereof. Following surgery, co-employee, Don Underwood, telephoned Zingerman, telling Zingerman that Zingerman should not return to work as Roger Lyons was going to make work difficult for Zingerman and that Roger had instructed Don Underwood not to help Zingerman.

22. Bill Casey, Zingerman's Union Agent, told Zingerman to forget about whatever had happened.

23.     When Zingerman's doctor gave Zingerman permission to return to work following surgery, Roger Lyons told Zingerman there were no jobs available for Zingerman.

24.     Zingerman subsequently needed a second surgery following Zingerman's May 29, 1998 on-the-job injury.

25.     On May 16, 2001, Zingerman's doctor gave Zingerman permission to return to work. Zingerman was again informed by Roger Lyons there were no jobs available for Zingerman and Zingerman's employment was terminated.

26.     Freeman acted to create and maintain a hostile work environment for Zingerman because of Zingerman's religion, national origin and opposition to discrimination, by engaging in the following behavior:

    A.     Removing Zingerman's workbench.

    B.     Telling Zingerman "D.P.s (Displaced Persons) don't need benches."

    C.     Zingerman's Supervisor, Roger Lyons, told Zingerman "I hate the D.P. and Jew."

    D.     Zingerman's Supervisor, Roger Lyons, knew Zingerman had some difficulty reading and writing English and instructed other employees not to help Zingerman with tasks involving reading and writing English.

    E.     Zingerman complained to Bill Casey, Plaintiff's Union Agent, about the discrimination, but no action was taken by Bill Casey.

    F.     Zingerman complained to Harold (last name unknown), Branch Manager, about the discrimination, but no action was taken by Harold (last name unknown).

27.     Freeman terminated Zingerman because of Zingerman's religion and national origin.

28.     Freeman created a hostile work environment and interfered with Zingerman's ability to do his job.

29.     Zingerman opposed the discrimination.

30.     On May 16, 2001, Zingerman was terminated by Freeman without just cause.

31.     Zingerman has not received compensation from Freeman since the termination.

32.     As a result of the hostile work environment, Zingerman has lost in excess of $40,000.00 in income and benefits.

33.     As a result of the hostile work environment, Zingerman has suffered anguish, emotional trauma, pain and suffering.

34. As a result of the hostile work environment, Zingerman has incurred substantial legal fees and costs in prosecution of this matter and will continue to incur substantial attorney fees and costs in the future which are anticipated to be in excess of $50,000.

35. Freeman is a corporation with its principal place of business in Cook County, Illinois.

36. Freeman is engaged in manufacturing products which is an industry affecting commerce and, at all relevant times hereto, was an employer subject to the jurisdiction of this Court.

37. Zingerman has complied with all administrative prerequisites by filing timely a Charge of Discrimination based on religion, national origin, retaliation and hostile work environment with the EEOC on January 14, 2002. A copy of the Charge is attached as Exhibit "A" and incorporated herein.

38. Several days after May 29, 2002, Zingerman received a Determination And Notice Of Right To Sue from the EEOC. A copy of the Determination is attached as Exhibit "B" and incorporated herein.

39. Zingerman was terminated by Freeman as a result of Zingerman's religion, being Jewish.

40. Freeman had no legitimate reason for termination of Zingerman.

41. By terminating Zingerman, Freeman willfully and intentionally discriminated against Zingerman on the basis of his religion.

42. Further, by terminating Zingerman's employment, Defendant knew and/or showed reckless disregard for the matter of whether its conduct violated the Acts.

43. As a result of the unlawful and willful acts complained of herein, Zingerman has suffered loss of employment, wages, benefits and other compensation.

44. Zingerman was terminated by Employer as a result of Zingerman's religion and national origin.

45. Employer had no legitimate reason for termination of Zingerman.

46. By terminating Zingerman, Employer willfully and intentionally discriminated against Zingerman on the basis of his religion and/or national origin.

47. Further, by terminating Zingerman's employments, Defendant knew and/or showed reckless disregard for whether its conduct violated the Acts.

48. As a result of the unlawful and willful acts complained of herein, Zingerman has suffered loss of employments, wages, benefits and other compensation.

Wherefore, Zingerman respectfully requests this Court enter judgment granting Zingerman

the following:

A.    Payment of all back pay employee benefits and pension benefits in excess of $40,000.00.

B.    Front pay and all prospective lost benefits.

C.    Compensatory damages of $300,00.00 or more in actual damages for pain and suffering.

D.    Reinstatement to his prior position.

E.    Punitive damages of $300,000.00 or more.

F.    An award for liquidated damages, attorney fees and costs and any other relief this Court deems appropriate.

## COUNT IV - RETALIATION

1.    This Court has jurisdiction of this case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, *et seq.*, The Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101, *et seq.*; the First Amendment of the United States Constitution; Article I, Section 3, of the Illinois Constitution; the Religious Freedom Restoration Act of 1993 (RFRA) and Civil Rights Act of 1991 (hereinafter referred to as "Acts").

2.    This action properly lies in this District pursuant to 28 U.S.C. Sec. 1391 because the claim arose in this Judicial District.

3.    Zingerman's religion is Judaism.

4.    Zingerman's national origin is Russian.

5.    Zingerman is a resident of Cook County, Illinois.

6.    Zingerman was employed by Defendant, Freeman, from September, 1994 until he was involuntarily terminated on May 16, 2001.

7.    During his employment with Freeman, Zingerman performed all material conditions and requirements of his positions, the last position being carpenter, in a satisfactory manner.

8.    Zingerman's supervisor, Roger Lyons, treated Zingerman unfairly in that prior to becoming Zingerman's supervisor, Roger Lyons told a co-employee, Jerry Gordowicz, that when Roger Lyons became a Supervisor, Roger Lyons intended to "get rid of" a couple of D.P.s (Displaced Persons) including Zingerman, and give jobs to Roger Lyon's family and friends.

9.    Many of Zingerman's co-workers used workbenches in the course of performing their jobs.

10. After Roger Lyons became Zingerman's Supervisor, Roger Lyons had the workbench which Zingerman was using removed and told Zingerman that "D.P.'s don't need benches."

11. Roger Lyons told Zingerman "I hate the D.P. and Jew."

12. One of Zingerman's job responsibilities included working with an aluminum saw.

13. Roger Lyons told Zingerman that Zingerman could no longer work the saw and shortly thereafter gave that job to one of Roger Lyon's relatives.

14. Zingerman has some difficulty reading and writing English. Roger Lyons was well aware of this and instructed other employees not to let anyone help Zingerman with tasks involving reading and writing English.

15. Zingerman complained to Bill Casey, Zingerman's Union Agent, about the discrimination Zingerman was subjected to by Roger Lyons.

16. No action was taken by Bill Casey.

17. Zingerman complained to Tom Rockelman, Zingerman's Floor Manager, about the discrimination Zingerman was subjected to by Roger Lyons.

18. Tom Rockelman took Zingerman to speak to Harold (last name unknown), Zingerman's Branch Manager.

19. Zingerman complained to Harold (last name unknown), Branch Manager, about the discrimination Zingerman was subjected to by Roger Lyons.

20. No action was taken by Harold (last name unknown).

21. On May 29, 1998, Zingerman was injured on-the-job and required surgery as a result thereof. Following surgery, co-employee, Don Underwood, telephoned Zingerman, telling Zingerman that Zingerman should not return to work as Roger Lyons was going to make work difficult for Zingerman and that Roger had instructed Don Underwood not to help Zingerman.

22. Bill Casey, Zingerman's Union Agent, told Zingerman to forget about whatever had happened.

23. When Zingerman's doctor gave Zingerman permission to return to work following surgery, Roger Lyons told Zingerman there were no jobs available for Zingerman.

24. Zingerman subsequently needed a second surgery following Zingerman's May 29, 1998 on-the-job injury.

25. On May 16, 2001, Zingerman's doctor gave Zingerman permission to return to work. Zingerman was again informed by Roger Lyons there were no jobs available for Zingerman

and Zingerman's employment was terminated.

26. Freeman retaliated against Zingerman because of Zingerman's opposition to discrimination against Zingerman, by engaging in the following behavior:

    A.    Removing Zingerman's workbench.

    B.    Telling Zingerman "D.P.s (Displaced Persons) don't need benches."

    C.    Zingerman's Supervisor, Roger Lyons, told Zingerman "I hate the D.P. and Jew."

    D.    Zingerman's Supervisor, Roger Lyons, knew Zingerman had some difficulty reading and writing English and instructed other employees not to help Zingerman with tasks involving reading and writing English.

    E.    Zingerman complained to Bill Casey, Plaintiff's Union Agent, about the discrimination, but no action was taken by Bill Casey.

    F.    Zingerman complained to Harold (last name unknown), Branch Manager, about the discrimination, but no action was taken by Harold (last name unknown).

27. Freeman terminated Zingerman because of Zingerman's religion, national origin and opposition to discrimination.

28. Freeman interfered with Zingerman's ability to do his job.

29. Zingerman opposed the discrimination.

30. Freeman retaliated against Zingerman on May 29, 1998 by stating Zingerman's Supervisor was going to make work difficult for Zingerman and had instructed an employee, Don Underwood, not to help Zingerman.

31. Freeman retaliated against Zingerman by discharging Zingerman on May 16, 2001.

32. On May 16, 2001, Zingerman was terminated by Freeman without just cause.

33. Zingerman has not received compensation from Freeman since the termination.

34. As a result of the retaliation, Zingerman has lost in excess of $40,000.00 in income and benefits.

35. As a result of the retaliation, Zingerman has suffered anguish, emotional trauma, pain and suffering.

36. As a result of the retaliation, Zingerman has incurred substantial legal fees and costs in prosecution of this matter and will continue to incur substantial attorney fees and costs in the future which are anticipated to be in excess of $50,000.

37. Freeman is a corporation with its principal place of business in Cook County, Illinois.

38. Freeman is engaged in manufacturing products which is an industry affecting commerce and, at all relevant times hereto, was an employer subject to the jurisdiction of this Court.

39. Zingerman has complied with all administrative prerequisites by filing timely a Charge of Discrimination based on religion, national origin, retaliation and hostile work environment with the EEOC on January 14, 2002. A copy of the Charge is attached as Exhibit "A" and incorporated herein.

40. Several days after May 29, 2002, Zingerman received a Determination And Notice Of Right To Sue from the EEOC. A copy of the Determination is attached as Exhibit "B" and incorporated herein.

41. Zingerman was terminated by Freeman as a result of Zingerman's religion, being Jewish and national origin, Russian.

42. Freeman had no legitimate reason for termination of Zingerman.

43. By terminating Zingerman, Freeman willfully and intentionally discriminated against Zingerman on the basis of his religion.

44. Further, by terminating Zingerman's employment, Defendant knew and/or showed reckless disregard for the matter of whether its conduct violated the Acts.

45. As a result of the unlawful and willful acts complained of herein, Zingerman has suffered loss of employment, wages, benefits and other compensation.

46. Zingerman was terminated by Employer as a result of Zingerman's religion and national origin.

47. Employer had no legitimate reason for termination of Zingerman.

48. By terminating Zingerman, Employer willfully and intentionally discriminated against Zingerman on the basis of his religion and/or national origin.

49. Further, by terminating Zingerman's employments, Defendant knew and/or showed reckless disregard for whether its conduct violated the Acts.

50. As a result of the unlawful and willful acts complained of herein, Zingerman has suffered loss of employments, wages, benefits and other compensation.

Wherefore, Zingerman respectfully requests this Court enter judgment granting Zingerman the following:

A.    Payment of all back pay employee benefits and pension benefits in excess of

$40,000.00.

B.     Front pay and all prospective lost benefits.

C.     Compensatory damages of $300,00.00 or more in actual damages for pain and suffering.

D.     Reinstatement to his prior position.

E.     Punitive damages of $300,000.00 or more.

F.     An award for liquidated damages, attorney fees and costs and any other relief this Court deems appropriate.

Jack Zingerman

By: _Robert E Pinzur_
One of his attorneys

Pinzur & Hartstein, Ltd.
Attorney No. 3122002
Attorney for Plaintiff
Suite 208, 4180 RFD Route 83
Long Grove, IL 60047
847/821-5290
847/821-5293 (fax)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 21CA2O1356 |

## State of Illinois Department of Human Rights
*State or local Agency, if any* _____ and EEOC

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Mr. Jack Zingerman | (847) 673-3044 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 6726 North Avers, Lincolnwood, IL 60712 | | 04 / 25 / 1948 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Freeman Decorating Co. | 15+ | (773) 379-5040 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 5040 West Roosevelt Road, Chicago, IL 60644 | | Cook |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE ☐ COLOR ☐ SEX ☒ RELIGION ☒ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☒ OTHER *(Specify)* Hostile Work Environment

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| / / 1995 | 05 / 16 / 2001 |
| ☒ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

See Exhibit "A" attached hereto and made a part hereof.

JAN 1 4 2002

**EXHIBIT** ___ "A"

Claimant is represented by Pinzur & Hartstein, Ltd., Attorneys At Law, 4180 RFD Route 83, Suite 208, Long Grove, IL 60047, 847/821-5290. Fax: 847/821-5293. All communications are requested through Pinzur & Hartstein, Ltd.

☒ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

NOTARY *(When necessary for State and Local Requirements)*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT *Zingerman*

## EXHIBIT "A"

I.    I am a Russian immigrant and was employed by Freeman Decorating Co. ("Employer") as a carpenter beginning in September, 1994. Beginning in approximately 1995, I was discriminated against on the basis of my religion, Judaism, and my national origin, Russian, subjected to a hostile work environment and retaliated against for opposing discrimination by being discharged in May, 2001. I believe my discharge was also in retaliation for my pending worker's compensation claim resulting from my on-the-job injury in 1998. My immediate supervisor was Roger Lyons.

II.    Employer told me there were no jobs available for me.

III.    I believe I have been discriminated against on the basis of religion and national origin, subjected to a hostile work environment and retaliated against for opposing discrimination in that:

    A.    I performed my job satisfactorily at all times since my hire.

    B.    My supervisor, Roger Lyons, treated me unfairly in that prior to becoming my supervisor, Roger told employee Jerry Gordowicz that when he became a supervisor, Roger intended to "get rid of" a couple of D.P.s (Displaced Persons), including me, and give jobs to his family and friends.

    C.    Many of my co-workers used workbenches in the course of performing their jobs. After Roger Lyons became my supervisor, Roger Lyons had the workbench which I was using removed and told me that "D.P.s don't need benches."

    D.    Roger Lyons told me "I hate the D.P. and Jew."

    E.    One of my job responsibilities included working with an aluminum saw. On a particular occasion while I was working with the aluminum saw, I noticed that six crates of brand new aluminum, known as "P31", had been thrown into the garbage dumpster by an unknown person. I removed the brand new metal and used it in the course of my job in an attempt to save money for Employer. When Tom Rockelman, floor manager, saw that employees had wasted the metal and thrown it away, Tom asked me who had placed the metal into the dumpster. I told Tom I did not know. Following my conversation with Tom regarding the wasted metal, Tom Rockelman called Roger Lyons into his office for a meeting. Upon leaving the meeting, Roger Lyons told me I could no longer work the saw and shortly thereafter gave that job to one of Roger's relatives.

    F.    A number of employees had a parking space reserved for their exclusive use during work hours. I did not initially have a reserved parking space. When a parking space became available as the result of an employee leaving the company, I was assigned

a parking space for my exclusive use. Following assignment of the parking space to me, Roger Lyons gave my parking space to another employee with no explanation or notice to me. I complained to Harold (last name unknown), Branch Manager, and Harold (last name unknown) gave me back my parking space.

G. I have some difficulty reading and writing English. Roger Lyons was well aware of this and instructed other employees not to let anyone help me with tasks involving reading and writing English.

H. I complained to Bill Casey, union agent, about the discrimination I was subjected to by Roger Lyons. No action was taken by Bill Casey.

I. I complained to Tom Rockelman about the discrimination I was subjected to by Roger Lyons. Tom Rockelman took me to speak to Harold (last name unknown), Branch Manager.

J. I complained to Harold (last name unknown), Branch Manager, about the discrimination I was subjected to by Roger Lyons. No action was taken by Harold (last name unknown).

K. On May 29, 1998, I was injured on-the-job and required surgery as a result thereof. Following surgery, employee Don Underwood telephoned me, telling me I should not return to work as Roger Lyons was going to make work difficult for me and that Roger had instructed Don not to help me.

L. I complained to Bill Casey, union agent, about ongoing discrimination by Roger Lyons and Bill Casey told me to forget about whatever had happened and took no action.

M. When my doctor gave me permission to return to work following surgery, Roger Lyons told me there were no jobs available for me.

N. I subsequently needed a second surgery following my May 29, 1998 on-the-job injury.

O. On May 16, 2001, my doctor gave me permission to return to work. I was again informed by Roger Lyons there were no jobs available for me and my employment was terminated.

Employer's actions constituted religious and national origin discrimination, creation of a hostile work environment and retaliation for opposing discrimination as well as retaliation for my pending worker's compensation claim resulting from my on-the-job injury in 1998.

Equal Employment Opportunity Commission

# DISMISSAL AND NOTICE OF RIGHTS

To: Jack Zingerman
6726 N. Avers
Lincolnwood, IL 60712

From: Equal Employment Opportunity Commission
500 West Madison
Suite 2800
Chicago, Illinois 60661

Certified No.: 7099 3400 0006 7301 3994

[     ] *On behalf of a person aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210A201356 | Y. Macariola-Wolohan, Investigator | (312) 886-4821 |

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[     ] The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[     ] Respondent employs less than the required number of employees.

[     ] Your charge was not timely filed with the Commission, *i.e.*, you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[     ] You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 days in which to respond to our final written request.

[     ] The Commission has made reasonable efforts to locate you and has been unable to do so. You have had at least 30 days in which to respond to a notice sent to your last known address.

[     ] The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

[  X  ] The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[     ] Other *(briefly state)* _____

## - NOTICE OF SUIT RIGHTS -

[  X  ] **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.**

[     ] **Age Discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.**

[     ] **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

On behalf of the Commission

5-29-02
_____

*John P. Rowe*
_____
John P. Rowe, District Director

Enclosures
    Information Sheets
    Copy of Charge
cc:  Respondent(s)          Freeman Decorating Company

EEOC Form 161 (Test 5/95)


EXHIBIT ___"B"___

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Jack Zingerman

**DEFENDANTS**

Freeman Decorating Co.

DOCKETED
AUG 2 6 2002

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___Cook___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___Cook___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Pinzur & Hartstein, Ltd.
4180 RFD Route 83, Suite 208
Long Grove, IL 60047
847/821-5290

ATTORNEYS (IF KNOWN)

**JUDGE COAR**

02C 6050 MAGISTRATE JUDGE DENLOW

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☒ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION

(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Title VII of the Civil Rights Act of 1964, 42 USC Sec. 2000e, et seq., Civil Rights Act of 1961, The Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101, et seq., First Amendment of the United States Constitution, Article I, section 3, of the Illinois Constitution, Religious Freedom Restoration Act of 1993. Discrimination based on religion, national origin

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $ in excess of $600,000.00

CHECK YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

## VIII. This case

☒ is not a refiling of a previously dismissed action.

☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE 8/23/02

SIGNATURE OF ATTORNEY OF RECORD
Robert S. Pinzur

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of

Jack Zingerman

vs.

Freeman Decorating Co.

FILED-EO4

02 AUG 23 PM 3: 43

CLERK
U.S. DISTRICT COURT

Case Number:

**02C  605**

JUDGE COAR

**APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:**

Jack Zingerman

MAGISTRATE JUDGE DENLO

| (A) | (B) |
|---|---|
| SIGNATURE *Robert S. Pinzur* | SIGNATURE *Elliott D. Hartstein* |
| NAME Robert S. Pinzur | NAME Elliott D. Hartstein   DOCKETED |
| FIRM Pinzur & Hartstein, Ltd. | FIRM Pinzur & Hartstein, Ltd.  AUG 2 6 2002 |
| STREET ADDRESS 4180 RFD Route 83, Suite 208 | STREET ADDRESS 4180 RFD Route 83, Suite 208 |
| CITY/STATE/ZIP Long Grove, IL 60047 | CITY/STATE/ZIP Long Grove, IL 60047 |
| TELEPHONE NUMBER 847-821-5290   FAX NUMBER 847-821-5293 | TELEPHONE NUMBER 847-821-5290   FAX NUMBER 847-821-5293 |
| E-MAIL ADDRESS PandHLaw@aol.com | E-MAIL ADDRESS PandHLaw@aol.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 3122002 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 1147099 |
| MEMBER OF TRIAL BAR?   YES ☒  NO ☐ | MEMBER OF TRIAL BAR?   YES ☒  NO ☐ |
| TRIAL ATTORNEY?   YES ☒  NO ☐ | TRIAL ATTORNEY?   YES ☒  NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL?   YES ☐  NO ☐ |
| (C) | (D) |
| SIGNATURE | SIGNATURE *Barbara B. Bryan* |
| NAME Laura E. Cohen | NAME Barbara B. Bryan |
| FIRM Pinzur & Hartstein, Ltd. | FIRM Pinzur & Hartstein, Ltd. |
| STREET ADDRESS 4180 RFD Route 83, Suite 208 | STREET ADDRESS 4180 RFD Route 83, Suite 208 |
| CITY/STATE/ZIP Long Grove, IL 60047 | CITY/STATE/ZIP Long Grove, IL 60047 |
| TELEPHONE NUMBER 847-821-5290   FAX NUMBER 847-821-5293 | TELEPHONE NUMBER 847-821-5290   FAX NUMBER 847-821-5293 |
| E-MAIL ADDRESS PandHLaw@aol.com | E-MAIL ADDRESS PandHLaw@aol.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06236873 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6182558 |
| MEMBER OF TRIAL BAR?   YES ☐  NO ☒ | MEMBER OF TRIAL BAR?   YES ☐  NO ☒ |
| TRIAL ATTORNEY?   YES ☐  NO ☒ | TRIAL ATTORNEY?   YES ☐  NO ☒ |



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

FILED

In the Matter of

Jack Zingerman
vs.
Freeman Decorating Co.

'02 AUG 23 PM 3:49

U.S. DISTRICT COURT

Case Number:

02C 6050

JUDGE COAR

MAGISTRATE JUDGE DENLOW

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Jack Zingerman

| (E) | | | | (F) DOCKETED | | | |
|---|---|---|---|---|---|---|---|
| SIGNATURE | | | | SIGNATURE AUG 2 6 2002 | | | |
| NAME Megan L. Kerr | | | | NAME | | | |
| FIRM Pinzur & Hartstein, Ltd. | | | | FIRM | | | |
| STREET ADDRESS 4180 RFD Route 83, Suite 208 | | | | STREET ADDRESS | | | |
| CITY/STATE/ZIP Long Grove, IL 60047 | | | | CITY/STATE/ZIP | | | |
| TELEPHONE NUMBER 847-821-5290 | FAX NUMBER 847-821-5293 | | | TELEPHONE NUMBER | | FAX NUMBER | |
| E-MAIL ADDRESS PandHLaw@aol.com | | | | E-MAIL ADDRESS | | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6257102 | | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | |
| MEMBER OF TRIAL BAR? | | YES ☐ NO ☒ | | MEMBER OF TRIAL BAR? | | YES ☐ NO ☐ | |
| TRIAL ATTORNEY? | | YES ☐ NO ☒ | | TRIAL ATTORNEY? | | YES ☐ NO ☐ | |
| | | | | DESIGNATED AS LOCAL COUNSEL? | | YES ☐ NO ☐ | |
| (G) | | | | (H) | | | |
| SIGNATURE | | | | SIGNATURE | | | |
| NAME Brian S. Brewer | | | | NAME | | | |
| FIRM Pinzur & Hartstein, Ltd. | | | | FIRM | | | |
| STREET ADDRESS 4180 RFD Route 83, Suite 208 | | | | STREET ADDRESS | | | |
| CITY/STATE/ZIP Long Grove, IL 60047 | | | | CITY/STATE/ZIP | | | |
| TELEPHONE NUMBER 847/821-5290 | FAX NUMBER 847/821-5293 | | | TELEPHONE NUMBER | | FAX NUMBER | |
| E-MAIL ADDRESS PandHLaw@aol.com | | | | E-MAIL ADDRESS | | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6274618 | | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | |
| MEMBER OF TRIAL BAR? | | YES ☐ NO ☒ | | MEMBER OF TRIAL BAR? | | YES ☐ NO ☐ | |
| TRIAL ATTORNEY? | | YES ☐ NO ☒ | | TRIAL ATTORNEY? | | YES ☐ NO ☐ | |