Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6050 | **DATE** | 9/02/2003 |
| **CASE TITLE** | Zingerman vs. Freeman Decorating Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons given in the attached memorandum opinion, Defendant's Motion for Summary Judgment [No. 10] is granted in its entirety. Judgment will be entered for Defendant. This case is closed. Any and all other pending matters are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | SEP 3 2003 | |
| | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 17 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 03 SEP -2 PH 12:22 | date mailed notice | |
| jar/lc | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACK ZINGERMAN, | ) |
| Plaintiff, | ) No. 02 C 6050 |
| | ) |
| | ) HONORABLE DAVID H. COAR |
| v. | ) |
| | ) |
| FREEMAN DECORATING CO., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jack Zingerman ("Plaintiff" or "Zingerman") filed a Charge of Discrimination with the EEOC on January 14, 2002 alleging retaliation, hostile environment, and national origin and religion-based discrimination. The EEOC issued its Dismissal and Notice of Rights letter on May 29, 2002. Plaintiff timely filed his Complaint on August 23, 2002. Plaintiff subsequently filed an Amended Complaint on November 5, 2002. This case comes before the Court on Defendant Waukegan Township Assessor's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant's Motion has been fully briefed and it is now ripe for decision.

I.  **Discovery Matters**

Before addressing the merits of Defendant's Summary Judgment Motion, the Court will address Plaintiff's discovery-related objections to certain affidavits Defendant relies upon in its motion. Plaintiff asserts that the Defendant failed to disclose information on two occasions: pursuant to the mandatory disclosure requirements of Rule 26(a)(1)(A) and in response to one of

1

Plaintiff's interrogatories. Plaintiff further asserts that the Defendant acted in bad faith with respect to agreed depositions after the date set for the close of discovery. Finally, Plaintiff asserts that the Defendant disclosed the identity of two witnesses too late in the discovery process.

As an initial matter, the Court notes its displeasure in confronting discovery disputes that are submitted for the first time in response to a Motion for Summary Judgment. The schedule in this case was set in December 2002, and discovery was set to close on April 30, 2003. If there are problems during discovery, the appropriate response is first to seek to resolve the issue among the parties and, if that fails, then to bring the issue to the attention of the Court with an appropriate motion (e.g. Motion to Compel or Motion for Sanctions). Bringing discovery issues to the Court's attention in response to a Motion for Summary Judgment is a backwards approach that is unlikely to be met favorably. Since the issues are before the Court now, though, they must be addressed.

### A. Rule 26(a)(1)(A) and Responses to Interrogatories

Plaintiff asserts that the Defendant failed to comply with Rule 26(a)(1)(A) when it failed to identify the subject of information that witnesses Lyons, Rockelmann and Albaugh possessed. Plaintiff further asserts that Defendant failed to provide a satisfactory response to one of Plaintiff's Interrogatories, again with respect to the subject of knowledge of witnesses Lyons, Rockelmann, Albaugh, and Markiewicz. Plaintiff seeks exclusion of the testimony of these witnesses and denial of Defendant's Summary Judgment Motion as a sanction for these alleged failures.

The 1993 amendments to the Rules of Civil Procedure initiated the mandatory disclosure requirements of Rule 26(a). The rule was designed to accelerate the exchange of basic

information about the case so that the parties would not be groping in the dark until propounding interrogatories and obtaining satisfactory answers, often with a Motion to Compel. While certain elements of discovery gamesmanship persist, Rule 26(a) has made a substantial dent in their frequency and scope.

In this case, the Defendant included Lyons, Rockelmann, and Albaugh, but allegedly failed to include the subject of information that they might possess. The Plaintiff has not provided the Court with a copy of Defendant's allegedly defective Rule 26 disclosure, so the Court cannot make an independent assessment of the defect in the disclosure. Plaintiff complains that Defendant compounded this error when it failed to include the subject of knowledge of these same three witnesses and a fourth, Robert Markiewicz, in its answer to one of Plaintiff's interrogatories. Here, too, the Plaintiff failed to provide the Court with a copy of Defendant's allegedly defective interrogatory response.

Based on the information the parties have provided the Court, these two alleged failures of the Defendant clearly do not merit a sanction at this late moment in the litigation. This is not a complicated case. It does not require expert testimony and the subject matter is not obscure. It's employment discrimination, not rocket science. Without even looking at the Complaint, one can safely assume that any given witness will likely be able to testify about one of three things: (1) the Plaintiff's employment history; (2) the Defendant's employment practices; and/or (3) the specifics of the alleged discriminatory treatment. Moreover, the subject of information that three of these four witnesses might possess is apparent from the face of the Complaint. Harold Albaugh is almost certainly the person referred to in the Complaint as the Branch Manager, "Harold (last name unknown)." See Pl. Comp. Count I, ¶¶ 17-19. Roger Lyons is the alleged

discriminatory actor in this case. The third witness, Tom Rockelmann, is Lyons' supervisor and a person to whom the Plaintiff complained of discriminatory treatment. See Pl. Comp., Count I, ¶¶ 16–17. For these three witnesses, the Defendant's alleged lack of disclosure of the subject of their knowledge does not carry an iota of prejudice to the Plaintiff. The only one of the four witnesses not named in the Complaint is Robert Markiewicz. Markiewicz is the Union Steward for Local 1027 at Freeman. Although the subject of information he might be able to provide is not apparent from the face of the Complaint, it is not difficult to guess.

Plaintiff's requests that the testimony of Albaugh, Lyons, Rockelmann, and Markiewicz be excluded and the summary judgment motion be denied on the basis of these errors are denied.

### B. Alleged Bad Faith Regarding Deposition Scheduling

Discovery in this case closed on April 30, 2003. Due to a series of circumstances, the parties had agreed among themselves to conduct some depositions after the close of discovery.[1] Defendant expressed concern to Plaintiff about conducting the depositions after the close of discovery, since the dispositive motion deadline was thirty days after the close of discovery. Discovery closed on April 30, 2003 without either party filing a request for an extension of discovery or an extension of the filing date for dispositive motions.

On May 2, 2003, Defendant filed an agreed motion to extend the deadline for dispositive motion. The Motion requested an extension of the discovery deadline until May 21 and an extension of the dispositive motion deadline until June 20. When the parties appeared in support of the motion on May 8, 2003, the motion was denied. At that point, neither party presented any

---

[1] The affidavit of Helen N. Baker, attached as Exhibit A to Defendant's Reply in Support of Summary Judgment, details the series of events that led to the scheduling of depositions after the close of discovery. See Def. Rep. Supp. Summ. J., Ex. A.

4

further argument in support of the motion. Faced with a dispositive motion deadline three weeks from the date the motion for extension was denied, Defendant refused to produce the witnesses for the scheduled depositions.

This dispute represents a cautionary tale for both parties. Plaintiff should have scheduled the witness depositions sooner than the last two days of discovery. There are cases when witnesses do not become known or depositions do not seem necessary until near the end of the discovery period, but this is not such a case. The witnesses were known to the Plaintiff at an early stage and their value as witnesses is apparent from the Complaint. On the other hand, if the Defendant needed an extension of the dispositive motion deadline to conduct depositions after the discovery deadline, it should have made that a condition of the agreement to conduct the depositions. Instead, Defendant agreed to conduct the depositions after the discovery deadline prior to making any request to extend the dispositive motion deadline. When the request was denied, Defendant reneged on its agreement. Parties should not make agreements with one another that contain assumptions about future decisions of the Court, particularly when the decision might require a change in the trial date. Though sometimes it becomes necessary, changing the trial date of even one case has the potential to upset the trial calendar in this busy Court. At the scheduling conference, both parties were warned that under this Court's scheduling system, extensions of deadlines would not be granted because to do so would jeopardize the trial date.

While the Court does not approve of the Defendant's unilateral cancellation of the agreement to conduct depositions after the discovery deadline, neither does the Court believe the Defendant was acting in bad faith. Although the Defendant did agree to conduct the depositions

after the deadline, it brought its concern about the dispositive motion schedule to the Plaintiff's attention at the time of the agreement. Moreover, the Plaintiff indicated to Defendant that it would "follow with appropriate Motions" in the event that the agreed motion to extend the schedule was not granted. No motions, appropriate or otherwise, were made and the matter was not brought to the attention of the Court until the Plaintiff's response to the Defendant's summary judgment motion.

On this issue, both parties are in error. Plaintiff is guilty of waiting until the end of the Discovery period to conduct depositions of critical witnesses. This left Plaintiff vulnerable to unexpected events outside of this litigation that could diminish Plaintiff's ability to complete the depositions within the time frame. Defendant is guilty of agreeing to conduct depositions after the close of discovery without any assurance that the dispositive motion schedule would change. Both parties had legitimate reasons for these errors, but they are errors all the same. Since the parties share the blame for the problem with the depositions, there will be no sanction.

### C. Late Disclosure of Two Witnesses

Plaintiff's final discovery related complaint is that Defendant disclosed two witnesses, Drew Massa and Doug Van Ort, in the last seven days of the discovery period. Defendant provided disclosure on April 23 regarding Drew Massa and on April 29 regarding Doug Van Ort. This disclosure comes extremely late in the game.

Defendant contends that both Massa and Van Ort "are well-known to Zingerman as long-time managers of Freeman" so there is no prejudice to Plaintiff. (Pl. Rep. Supp. Mot. Summ. J. at 9.) This is the wrong approach to the question. Plaintiff may be intimately familiar with every person who works for Defendant, but that does not alter the goal of discovery, which is to enable

6

both sides to make effective preparation for trial. Disclosing the identity of potential witnesses during the last week (and even the last day) of discovery undermines Plaintiff's ability to prepare effectively for trial; it reeks of unfair surprise. New witnesses can change the direction and strategy of an entire case.

Moreover, the Defendant has proffered no justification for the late disclosure of these two witnesses. Just as the Plaintiff could not claim surprise as to the subject of information the timely disclosed witnesses would provide, neither can the Defendant claim that these witnesses only became known to it late in the discovery process. Drew Massa is the Risk Manager who oversees all worker's compensation matters relating to on-the-job injuries. Doug Van Ort as the General Manager of Defendant's Chicago facility. If Defendant wanted to rely on the testimony of these two witnesses at trial, it could (and almost certainly should) have disclosed that information to Plaintiff under the mandatory disclosure requirements of Rule 26(a)(1)(A). Failing that, these individuals should have been disclosed as potential witnesses at least two weeks prior to the end of the discovery. Consequently, the Court will not rely on their testimony in its decision on summary judgment and the Defendant will not be able to rely on their testimony at trial, should that become necessary.

This Court is not establishing a general rule that all witnesses have to be disclosed at least two weeks before the close of discovery. Rather, the Court is requiring parties who disclose witnesses during the last week of discovery have some justification for doing so. In this case, Defendant has none.

## II. Defendant's Summary Judgment Motion

### A. Factual Background

7

Defendant Freeman Decorating Company ("Defendant" or "Freeman") is in the business of designing, constructing, and setting up exhibits for trade shows. Freeman hired Plaintiff Jack Zingerman ("Plaintiff" or "Zingerman") as a carpenter in September 1994. Plaintiff obtained the position with Freeman through a referral from his union, Local 1027 of the Chicago District Council of Carpenters. Plaintiff worked in Freeman's warehouse and carpentry shop at 5040 W. Roosevelt Road in Chicago at various times between September 1994 and May 1998.

From September 1994 through December 1996, Roger Lyons was a co-worker of Plaintiff's at Freeman. In December 1996, Lyons was promoted and became Plaintiff's supervisor. Shortly after Lyons' promotion, he rearranged the workbenches in Defendant's carpenter shop. In the process, the workbench that Plaintiff commonly used was removed.

At the end of 1997 or the beginning of 1998, Plaintiff learned that he would be laid off for a period of time because Defendant was experiencing a shortage of work. Such layoffs are common due to fluctuations in the volume of available work. At or around this time, Plaintiff had been working at the aluminum saw in the shop. Lyons reassigned Plaintiff to other tasks and assigned other carpenters to work on the aluminum saw. Plaintiff contends that when he asked Lyons about the benches, Lyons used the term "D.P." Plaintiff asserts that D.P. is an acronym for displaced persons, which refers to immigrants.

In January 1998, Plaintiff complained to Lyons' Supervisor Tom Rockelmann that Lyons hated him because he was Russian. In response to Plaintiff's complaint, Rockelmann immediately called a meeting with the union steward, Paul Markiewicz, Lyons, and a shop foreman to discuss the complaint. In the meeting, Lyons denied that he had any discriminatory motivation against Plaintiff based on his Russian national origin and further stated that his own

8

family included members from different national origins. At the end of the meeting, Lyons, Rockelmann and Markiewicz believed the issue had been resolved to Plaintiff's satisfaction. Plaintiff never told Rockelmann that he was not satisfied with the outcome of the meeting in the Shop. Plaintiff never filed a grievance with the Union about discrimination. Plaintiff never again complained to any of Defendant's management personnel.

In addition to being of Russian origin, Plaintiff is also Jewish. Lyons did not know Plaintiff was Jewish. Plaintiff never complained to any member of management at Freeman of discrimination on account of his Jewish religion. Plaintiff also never told anyone who worked for Defendant that he was Jewish.

On May 29, 1998, Plaintiff was injured on the job. Between May 29, 1998 and May 16, 2001, Plaintiff was unable to work. He returned to Defendant's shop on May 16, 2001 and asked for light work. Plaintiff was informed that there was no "light work" available in the shop and that he would need to have a full medical release prior to returning to work. In June 2001, Lyons told Plaintiff that there was no available work in the shop at that time. Plaintiff construes this May action as involuntary termination. For the purposes of this summary judgment motion, the Court will refer to this action as the firing of Plaintiff.

Since January 2002, Plaintiff has worked for Defendant occasionally on an hourly or daily basis. His employment location since January 2002 has been at McCormick Place rather than at the carpenter's shop.

Plaintiff filed a Charge of Discrimination with the EEOC on January 14, 2002 alleging retaliation, hostile environment, and national origin and religion-based discrimination. The EEOC issued its Dismissal and Notice of Rights letter on May 29, 2002. Plaintiff timely filed his

Complaint on August 23, 2002. Plaintiff subsequently filed an Amended Complaint on November 5, 2002. Defendant has now moved for Summary Judgment.

**B.     Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); see also Schmidt v. Ottawa Medical Center, P.C., 322 F.3d 461, 463 (7th Cir. 2003). When evaluating a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and makes all reasonable inferences in her favor. See Haywood v. Lucent Technologies, — F.3d —, No. 01-4092, 2003 WL 1400496, at *3 (7th Cir. Mar. 20, 2003).

It is the moving party's burden to demonstrate the absence of genuine issues of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the moving party meets this burden, the non-moving party must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324. To successfully oppose the motion for summary judgment, the non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992).

**C.     Analysis**

Defendant seeks summary judgment on Plaintiff's four count complaint. Count I of the Complaint alleges discrimination based on his Jewish religion for his termination on May 16,

2001. Count II of the Complaint alleges discrimination based on his Russian national origin for his termination on May 16, 2001. Count III of the Complaint alleges that Lyons' discrimination created a hostile work environment for Plaintiff. Count IV of the Complaint alleges that Plaintiff's termination on May 16, 2001 was in retaliation for his complaints of discrimination.

### 1.   Continuing Violation Doctrine and the Statute of Limitations

The majority of the conduct that Plaintiff complains of now occurred between 1994 and his injury in May 1998. Under Title VII, a potential Plaintiff must file a charge with the EEOC within 300 days of the alleged discriminatory act. See 42 U.S.C. § 2000e-5(e). Complaints about conduct outside of the 300 day statute of limitations are untimely unless the Plaintiff can establish that the conduct constitutes a continuing violation. See Shanoff v. Illinois Dep't Human Services, 258 F.3d 696, 703 (7th Cir. 2001). "The continuing violation doctrine allows a plaintiff to get relief for time-barred acts by linking them with acts within the limitations period." Id.

The only conduct that occurred during the statutory period is when Plaintiff was not rehired in the shop in May 2001. Defendant has provided competent evidence that the failure to rehire Plaintiff in May 2001 was due to an absence of open positions. In addition, the conduct that Plaintiff complains of between 1994 and May 1998 is too distant in time to support a finding of a continuing violation. See Selan v. Kiley, 969 F.2d 560, 567 (7th Cir. 1992) (holding that two years between allegedly discriminatory acts weighs heavily against finding a continuing violation).

The only fact that militates against finding all the allegations between 1994 and 1998 to be time-barred is Plaintiff's injury. Plaintiff's injury removed him from the allegedly hostile

11

working environment for the period between May 1998 and the challenged termination in May 2001. In some cases, a protracted period of injury could be an equitable factor in favor of finding a continuing violation. The factor would be stronger if Plaintiff actually returned to work and experienced more allegedly discriminatory treatment.

In this case, there is no reason to apply the continuing violation doctrine to Plaintiff's claims. As regards the hostile working environment claim (Count III), Plaintiff had not experienced the allegedly hostile work environment for more than three years preceding his termination on May 16, 2001. According to Plaintiff's view of the facts, he had information sufficient to file his complaint regarding the hostile working environment at the time of his injury in May 1998. The Seventh Circuit commonly counsels hostile work environment Plaintiffs not to sleep on their rights. See Shanoff, 258 F.3d at 703 ("A plaintiff asserting a hostile environment claim cannot procrastinate.").

Finding that Plaintiff's complaints are not subject to the continuing violation doctrine necessitates a granting of summary judgment to Defendant on Count III of Plaintiff's complaint, the hostile work environment claim. As regards the other three counts of Plaintiff's complaint, the three-year time span between the majority of the complained of conduct and Plaintiff's involuntary termination undermines the potency of Plaintiff's allegations, but it does not require summary judgment outright.

This leaves Counts I, II, and IV of Plaintiff's Complaint for Defendant's Summary Judgment motion. Two of these counts, Count I for religious discrimination and Count II for national origin discrimination, can be treated together. Count IV, the retaliation count, requires a slightly different analysis.

## 2. Counts I and II of Plaintiff's Complaint

Counts I and II of Plaintiff's Complaint allege that Plaintiff's termination in May 2001 was discriminatory based on Plaintiff's religion and national origin respectively. A Title VII Plaintiff can establish discrimination directly through evidence of discriminatory intent or through the burden shifting method established in McDonnell-Douglas v. Green, 411 U.S. 792 (1973). See Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1397 (7th Cir. 1997) (discussing both methods). Zingerman has done neither.

Plaintiff's claim of religious discrimination must fail because there is no evidence that anyone in Defendant's employ even knew that Plaintiff was Jewish. Plaintiff did not dispute that he never told anyone at Freeman that he was Jewish, nor did he provide any competent evidence that anyone knew or suspected him to be Jewish. In order to discriminate against someone based on a religion, a person or entity must know or believe that the person belongs to the religion. Without knowledge or belief that Plaintiff belonged to a protected religious class, Defendant could not make any decisions on that basis.

Plaintiff's claim of national origin discrimination (Count II) at least has some evidence supporting it, but that evidence is scant and stale. When Plaintiff complained of national origin discrimination in January 1998, Defendant responded promptly in an attempt to redress Plaintiff's grievance. Plaintiff apparently was not pleased with the resolution (although he swallowed his complaints for more than three years), but this demonstrates a good faith effort on Defendant's part to address and eliminate perceived discrimination in the workplace.

Plaintiff has not sought to establish that Defendant's proffered reason for failing to employ him in May 2001 was pretextual. The only competent evidence in the record about

13

Defendant's need for employees in May 2001 demonstrates that there were no open positions. (Def. Facts, ¶¶ 44–45.) Moreover, Defendant's subsequent hiring of Plaintiff to work at McCormick Place undercuts Plaintiff's unsupported allegation that Defendant's reasons are pretextual.

There is no evidence in the record to support a finding that the firing of Plaintiff in May 2001 was based on proscribed discrimination. Defendant is entitled to summary judgment on Counts I and II of Plaintiff's Complaint.

### 3. Count IV of Plaintiff's Complaint

Count IV of Plaintiff's Complaint alleges that his firing in May 2001 was in retaliation for protected conduct. Title VII forbids an employer from punishing an employee for complaining about discriminating treatment in the workplace. 42 U.S.C. § 2000e-3(a). Retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination. See Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003).

Once again, Plaintiff can proceed either under the direct or indirect method of proof. Under the indirect method, Plaintiff would be required to show that similarly situated employees suffered no adverse employment actions. See Rogers, 320 F.3d at 754. Plaintiff has not presented any evidence on this point, so he is left only with the direct method of proof.

Under the direct method, Plaintiff must provide sufficient direct or circumstantial evidence of retaliation to demonstrate a genuine issue of material fact. Plaintiff's only direct evidence of retaliation are the plain facts that he complained and that he suffered an adverse employment action three years later. Here again, the lapse of time between the complaint and the

adverse action counsels against a finding that the two events were related. Moreover, Plaintiff has presented no evidence that Defendant's proffered reason for firing him in May 2001 was pretextual. Consequently, the Defendant is entitled to summary judgment.

## Conclusion

For the foregoing reasons, the Defendant's Summary Judgment Motion is granted in its entirety.

Enter:

_David H. Coar_
David H. Coar
United States District Judge

Dated: August 29, 2003